UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiffs | ) | |
| v. | ) | NO. 2:08-CR-29 PPS |
| DARRELL L. CANNON, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This case presents the issue of whether an inventory search conducted in the absence of a written police department policy runs afoul of the Fourth Amendment. In particular, Darrell Cannon seeks to suppress evidence that was seized during a search of an automobile made after his arrest and prior to the car being impounded. [DE 10]. I find that the search was proper because it conformed to an established Lake County Police Department policy, albeit a policy that was not committed to writing. Cannon's motion to suppress is therefore **DENIED.**

## BACKGROUND

Defendant Cannon is charged with being a felon in possession of a firearm that was recovered from an automobile that he was driving. According to Officer Angelo Vanni of the Lake County Police Department, on April 1, 2007, he observed Cannon driving a car at 54 mph in a 30 mph zone. Vanni also noticed that Cannon was not wearing a seat belt. Vanni turned on his overhead lights and spot light, and Cannon stopped the car in a no parking area and in a lane of traffic. Officer Vanni approached the car and made contact with Cannon while he was in the driver's seat. Vanni asked for a driver's license, but Cannon didn't have one. Vanni asked Cannon if he had any weapons in the vehicle, and Cannon responded that he did not. After

conducting a license check, Vanni learned that Cannon was driving while suspended and that he had never received a valid driver's license.  Vanni then arrested Cannon for driving without ever receiving a valid driver's license, in violation of  Indiana Code Section 9-24-18-1, a Class C Misdemeanor.  Under Indiana law, Class C Misdemeanors are not merely administrative violations; they are offenses for which people can be arrested so long as they are committed in the officer's presence. *See* Ind. Code § 35-33-1-1(a)(4).  Consequently, Officer Vanni handcuffed Cannon and placed him into the back of his squad car.

At this point, Vanni concluded that Cannon's car would have to be towed, because it was sitting in traffic and in a no-parking area.  He informed Cannon he was going to perform an inventory search and asked if there was anything in the car.  Cannon responded by stating that, "Well, I'm not sure if . . . I just got the car back from my sister and her boyfriend, so I don't know what you're gonna find."  Vanni asked once again if there was anything in the car and Cannon said, "Nothing man, I don't have nothing."  As Vanni approached the vehicle, he heard Cannon yell, "Shit," from the police car.

Vanni testified that it is Lake County Police Department procedure for officers to conduct vehicle inventory searches prior to a car being impounded.  He said the searches are performed to protect the police against liability for claims of stolen or missing property.  He also described the procedure used to conduct the inventory searches, including the sequence of which doors and seat areas to look through, which compartments to open and examine, and the rigorousness with which to search each specific area.  Vanni admitted that the Lake County procedures for inventory searches do not appear in any written form, but stated that they were established and taught to each officer during field training.  In fact, Vanni testified that he is a field training officer himself, and incorporates the inventory search procedures into his training sessions for new officers.

2

As he was conducting the inventory search of the passenger side of the vehicle, Vanni noticed the butt of a handgun sticking out from under the passenger seat.  A check on the gun revealed it was a stolen, semi-automatic handgun.  It was loaded with five (5) rounds of .380 caliber ammunition.  Cannon now seeks to have all evidence discovered in the vehicle suppressed, arguing that the government failed to prove the evidence was found during a reasonable search.

### **DISCUSSION**

The typical warrant and probable-cause requirements created by the Fourth Amendment are subject to a few recognized exceptions, one of which is for inventory searches of vehicles. *See United States v. Cherry*, 436 F.3d 769, 773 (7th Cir. 2006) (citing *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991).  In balancing the Constitution's protections of an individual's privacy rights against the promotion of the legitimate government interest of protecting police officers from claims and disputes over stolen property, vehicular inventory searches are permitted when found to be reasonable under the Fourth Amendment.  *See United States v. Jackson*, 189 F.3d 502, 508-09 (7th Cir. 1999)(citing *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976).

A vehicle inventory search of an arrestee in possession of a car is reasonable when it is carried out "in accordance with *standard procedures* in the local police department, [it] . . . tend[s] to ensure that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function." *Id*. at 375; *Jackson*, 189 F.3d at 509.  Inventory searches conducted pursuant to an established routine and procedure serve as a guard against the "pretext[ual] concealing [of] an investigatory police motive." *Cherry*, 436 F.3d at 777.   The Government must prove by a preponderance of the evidence that the inventory search exception to the Fourth

3

Amendment is applicable. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000); *United States v. Dudley*, 854 F.Supp. 570, 577 (S.D. Ind. 1994).

In this case, Officer Vanni had probable cause to arrest Cannon. So Vanni had to decide what to do with Cannon's car. Cannon was driving alone; no one else was available to drive it away on his behalf. And because Cannon car's was parked in an unsafe manner, Officer Vanni chose to have it impounded. This, of course, was perfectly permissible. *South Dakota v. Opperman*, 428 U.S. at 369. Officer Vanni then told Cannon that he intended to inventory the car's contents before it was towed.

Vanni testified that the Lake County Police Department has a standard policy and procedure for conducting such searches and he gave a detailed description of both. In addition, Vanni testified the policy and procedure for inventory searches are taught to all new officers as part of their training. *See United States v. Kordosky*, 921 F.2d 722, 723-24 (7th Cir. 1991)(affirming denial of motion to suppress where district court relied on testimony that new officers were regularly trained by senior officers as to police unit's inventory search procedures). Officer Vanni competently articulated the procedures used by his police department when conducting inventory searches, and he convincingly explained how he followed those procedures during the search of Cannon's car. The fact that Vanni is a field training officer himself made his testimony all the more credible.

The Government may show that the search was reasonable even though the police department policy is not found in written form. The Fourth Amendment reasonableness test created for inventory searches does not require the existence of a written policy. The Seventh Circuit directly addressed this issue in *United States v. Lozano*, 171 F.3d 1129, 1132 (7th Cir. 1999). Here's what it said:

4

> The lack of a written policy, however is not dispositive. *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996). Evidence of a well-honed police department routine may be sufficient to establish the standard procedures of an inventory search. *Id.*; *see also United States v. Arango-Correa*, 851 F.2d 54, 59 (2nd Cir. 1988); *cf. Pembaur v. Cincinati*, 475 U.S. 469, 491-81, 106 S.Ct. 1292, 1298-99, 89 L.E.2d 452 (1986) (an "official policy" need not be in writing to support liability under 42 § 1983).

*Id.; see also*, *Kordosky*, 921 F.2d at 723. Vanni's testimony as to the existence of a standard inventory search policy was persuasive, and there was no compelling evidence to the contrary brought by the Defendant. Despite the lack of a written description, I find it more likely than not that there exists in the Lake County Police Department an established routine which guides officer behavior during vehicle inventory searches. *See American Grain Trimmers, Inc. v. Office of Workers' Compensation Programs*, 181 F.3d 810, 817 (7th Cir. 1999) (noting that a preponderance of the evidence standard requires the trier of fact to believe that it is more likely than not that the evidence establishes the proposition in question). I am also satisfied that the search of Cannon's car comported with that policy.[1]

## CONCLUSION

For the reasons stated above, Cannon's Motion to Suppress [DE 10] is **DISMISSED**.

**SO ORDERED.**

**ENTERED**: July 14, 2008

                                        s/ Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT

---

[1] The Government argued that, in the alternative, the evidence was properly discovered as a search incident to arrest. Because I conclude that the inventory search was reasonable, there is no need to address this second theory.

5